**********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Glenn and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction of the parties and of the subject matter of this case. All the parties are bound by and subject to the North Carolina Workers' Compensation Act. All parties have been correctly designated and there is no question as to the misjoinder or nonjoinder of any party.
2. An employer-employee relationship existed between defendant-employer and plaintiff at all times relevant herein.
3. Royal Sunalliance was the workers' compensation carrier for the defendant-employer at all relevant times herein.
4. Plaintiff's average weekly wages were $443.52 per week, yielding a compensation rate of $295.69 per week.
5. Plaintiff was employed by Defendant-Employer Galey Lord at Marion North Carolina from April 8, 1992 through June 16, 1992 and from December 28, 1992 through June 8, 2003.
6. Plaintiff last worked for defendant-employer on December 8, 2002.
7. Plaintiff received accident and sickness disability benefits totaling $2,606.00 for the period from May 29, 2002 through November 18, 2002, and benefits totaling $2,640.00 from December 9, 2002 through June 9, 2003. These said benefits result from a company-funded plan, and defendants would be entitled to a credit if it is found that plaintiff is entitled to compensatory benefits.
8. The issues to be decided from the hearing were:
 a) Whether plaintiff has developed an occupational disease as a result of *Page 3 
employment with defendant-employer and/or whether plaintiff's pre-existing condition was aggravated or accelerated by employment with defendant-employer?
 b) If so, what, if any, benefits is plaintiff entitled to recover under the North Carolina Workers' Compensation Act?
 c) Whether plaintiff is entitled to attorney's fees for the unreasonable defense of this claim?
 d) If plaintiff's claim is found to be compensable, whether defendants are entitled to a credit for the accident and sickness disability benefits plaintiff has received from the employer funded plan?
9. The parties submitted documents marked as Stipulation Number 1, which consists of:
 a) Form 18,
 b) Form 61,
 c) Defendants' Response to Plaintiff's First Set of Interrogatories and Request for Production of Documents,
 d) Plaintiff's job title and description,
 e) Plaintiff's personnel file,
 f) Form 22,
 g) Plaintiff's medical file,
 h) Plaintiff's accident and sickness plan benefits,
 I) Transcript of plaintiff's recorded statement,
 j) Medical records of Dr. David Troxler, *Page 4 
 k) Medical records of Dr. Roger Hill,
 l) Report of Steven Carpenter,
 m) Defendants' Response to Plaintiff's Second Set of Interrogatories.
10. The parties submitted documents marked as Stipulation Number 2, which consists of:
 a) Medical Records from Kernodle Clinic (Dr. Michael DiMeo),
b) Plaintiff's work history with defendant-employer,
 c) Plaintiff's health history and medical records with the defendant-employer,
 d) Respiratory protection documentation in reference to plaintiff with defendant-employer,
e) Pulmonary Function Tests and Respiratory Questionnaires conducted by defendant-employer,
 f) Plaintiff's Responses to Defendants' First Set of Interrogatories,
 g) Cotton Dust Survey results maintained by defendant-employer.
 ***********
The pre-trial agreement and any and all other stipulations of the parties are hereby herein incorporated into the evidence of this matter as though they were fully set out herein.
 ***********
Based upon all of the competent evidence of record and the reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 5 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was sixty-four years old. Plaintiff is a high school graduate and has no additional formal training. Her work experience focused on the textile industry and manufacturing jobs.
2. Plaintiff worked for defendant-employer from April 8, 1992 through June 16, 1992 and from December 28, 1992 through June 8, 2003. Plaintiff held a number of positions with defendant-employer, however the majority of the time she worked as an inspector or re-inspector. Plaintiff inspected pure cotton or cotton blend cloth for imperfections.
3. As a result of her job, plaintiff was exposed to cotton dust. The cotton dust was so prevalent that it would coat the employees' clothing, hair and be all over them by the end of their shift.
4. At the end of the shift, the workers were required to clean the work areas using compressed air. The cleaning process took approximately fifteen minutes. Plaintiff wore a dust mask during the cleaning process. This was the only time she was required to wear breathing protection.
5. Plaintiff's shift did not coincide with other inspector's shifts. Therefore, plaintiff would work without breathing protection while other inspectors cleaned their nearby work areas.
6. During plaintiff's first three years of employment with defendant-employer, she did not have breathing problems. Her problems started gradually and grew worse over time. Consequently, plaintiff went to her family doctor, Dr. Hill.
7. After plaintiff failed to respond to his treatment, Dr. Hill referred plaintiff to Dr. David Troxler. Dr. Troxler specializes in pulmonary and critical care medicine. Dr. Troxler first saw plaintiff on September 24, 2002. His initial diagnosis was obstructive lung disease, which *Page 6 
he felt was in large part related to occupational exposure which plaintiff had as a result of her employment with defendant-employer.
8. On September 26, 2002, plaintiff underwent pulmonary function testing in Dr. Troxler's office. The pulmonary function studies indicated plaintiff had a component of obstructive lung disease.
9. Plaintiff was out of work on disability leave from May 29, 2002 until November 18, 2002, when Dr. Troxler released plaintiff to return to work. Dr. Troxler believed plaintiff could return to work; however, due to his concerns that her condition was work-related, he gave her a peak flow meter. Dr. Troxler gave plaintiff the peak flow meter in order to document whether plaintiff's pulmonary disease and pulmonary symptoms get worse when she goes back to work.
10. A peak flow meter is a portable device, about the size of a kazoo. Plaintiff was instructed on how to use the device. Plaintiff was instructed to take at least three reading per day. Plaintiff took the readings both at home and at work and recorded the results in a diary.
11. Plaintiff saw Dr. Troxler on November 22, 2002. Dr. Troxler had requested that plaintiff measure her peak flows from November 5 onward. Plaintiff generally recorded her peak flows on a three-times-a-day basis and recorded the times and the readings. The measurements indicated that plaintiff experienced a twenty to twenty-five percent decrease in her peak flows when she returned to work. Dr. Troxler opined that the results using the peak flow meter suggested that there was a temporal association between plaintiff going back to work and her developing increased symptoms related to her asthma. He further opined that plaintiff conducted the testing appropriately and gave a good faith effort. *Page 7 
12. Plaintiff worked until December 9, 2002, when she went out of work again because of her breathing problems. Plaintiff called Dr. Troxler's office on December 9 and reported that her breathing had gotten substantially worse. Dr. Troxler saw plaintiff on December 11, 2002. At that time, plaintiff underwent pulmonary function studies. Plaintiff had a marked reduction in her forced vital capacity and FEV-1 was down to levels of sixty-seven and seventy-three percent of normal. This was a reduction of twenty-five percent of what plaintiff had previously. Dr. Troxler opined that adjusting plaintiff's medications and sending her back to work was not going to work. Dr. Troxler was of the opinion that plaintiff could not go back to work.
13. On December 11, 2002, Dr. Troxler wrote a letter to plaintiff's physician, Dr. Hill indicating that plaintiff had progressive dyspnea and exacerbation of her chronic obstructive impairment secondary to work environment. He recommended that she go on medical leave and continue her medications.
14. Dr. Troxler saw plaintiff again on March 18, 2003. Plaintiff's condition was markedly improved. Plaintiff had been out of work for approximately two-and-half to three months at this time. However, she continued to smoke half a pack of cigarettes per day. Pulmonary function studies indicated that plaintiff's forced vital capacity was ninety-three percent of predicted and her FEV-1 was ninety percent of predicted, which are within the normal range but still show plaintiff had some mild degree of obstruction present. Dr. Troxler opined that the results demonstrated the effect plaintiff's work had on her breathing independent of her smoking history.
15. Dr. Troxler opined, and the Full Commission finds the same as fact, that plaintiff's position as an inspector and re-inspector with defendant-employer placed her at a *Page 8 
greater risk of developing the condition of occupational asthma than members of the general public not so employed.
16. Dr. Troxler further opined, and the Full Commission finds the same as fact, that plaintiff's position as an inspector and re-inspector with defendant-employer was a significant contributing factor in her development of occupational asthma.
17. Plaintiff saw Dr. Michael Dimeo, who is board certified in pulmonary medicine for an Independent Medical Examination on February 3, 2004. Dr. Dimeo believed plaintiff has asthma but opined that the likelihood that cotton dust is a significant contributor to plaintiff's respiratory difficulties is low. The Full Commission gives greater weight to the opinion of Dr. Troxler, plaintiff's treating pulmonary specialist, than that of Dr. Dimeo as to the cause of plaintiff's condition.
18. Plaintiff was evaluated by Stephen D. Carpenter, CRC, CDMS, CCM, MES. Mr. Carpenter is of the opinion that given plaintiff's age, education, training, work history, skills, abilities and her restrictions, plaintiff will be unable to find suitable employment and is most likely unable to engage in competitive employment on a regular basis.
19. Given the credible medical and vocational evidence of record, and as a result of her compensable occupational disease, the Full Commission finds that, plaintiff is unable to earn wages in any employment from December 9, 2002, through the present and continuing.
20. As a result of her breathing problems, plaintiff applied for and received disability benefits through her employer.
21. The Full Commission finds that this matter was reasonably defended by defendants.
 *********** *Page 9 
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In workers' compensation cases, plaintiff has the burden of proving every element of compensability. As part of this burden, plaintiff must present convincing evidence establishing these elements, including, in this case, expert medical testimony. Holly v. ACTS, Inc., 357 N.C. 228,234, 581 S.E.2d 750, 754 (2003); Harvey v. Raleigh PoliceDepartment, 96 N.C. App. 28, 35, 384 S.E.2d 549, 553, disc. rev.denied, 325 N.C. 706, 388 S.E.2d 454 (1989).
2. In order for an occupational disease to be compensable under N.C. Gen. Stat. § 97-53(13), plaintiff must prove that the disease is characteristic of individuals engaged in the particular trade or occupation in which the plaintiff was engaged, that the disease is not an ordinary disease of life to which the public is equally exposed, and that there exists a causal relationship between the disease and the plaintiff's employment. N.C. Gen. Stat. § 97-53(13); Rutledge v. TutlexCorp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983). Fann v. BurlingtonIndust., 59 N.C.App. 512, 296 S.E.2d 819 (1982); Booker v. Duke MedicalCenter, 297 N.C. 458, 256 S.E.2d 189 (1979).
3. Plaintiff has proven by the greater weight of the evidence that her employment with defendant-employer placed her at greater risk than the general public of developing occupational asthma. In addition, plaintiff has proven by the greater weight of the evidence that her employment with defendant-employer caused her to develop the condition.Id.
4. Given the credible medical and vocational evidence of record, and as a result of her compensable occupational disease, plaintiff is totally disabled and is entitled to compensation at the rate of $295.69 from December 9, 2002 and continuing until plaintiff has returned to work *Page 10 
earning the same or greater wages as she was making at the time of her disability as a result of her occupational disease or further orders of the North Carolina Industrial Commission. N.C. Gen. Stat. § 97-29;Russell v. Lowes Prod. Distribution, 108 N.C. App. 762 (1993).
5. Plaintiff is entitled to payment of all medical expenses incurred, or to be incurred, as a result of her occupational lung disease as may reasonably be required to effect a cure, provide relief, or lessen her period of disability. N.C. Gen. Stat. § 97-25.
6. This matter was reasonably defended by defendants, therefore plaintiff is not entitled to attorney's fees in this matter pursuant to N.C. Gen. Stat. § 97-88.1.
7. Defendant is entitled to a credit for the disability benefits defendant has paid to plaintiff under the employer's fully funded disability plan. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to attorney fees hereinafter approved, Defendants shall pay total disability benefits in the amount of $295.69 per week beginning December 9, 2002 and continuing until plaintiff has returned to work earning the same or greater wages as she was making at the time of her disability as a result of her occupational disease or further orders of the North Carolina Industrial Commission. All sums that have accrued shall be paid in one lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by the plaintiff as a result of the compensable injury when bills for the same have been submitted to and approved by the North Carolina Industrial Commission, for so long as such evaluations, *Page 11 
treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under paragraph 1 of this award shall be deducted from that sum and paid directly to plaintiff's counsel. Thereafter, every fourth compensation check due plaintiff shall be paid directly to plaintiff's counsel.
4. Defendant shall be given credit for all disability benefits heretofore paid to plaintiff in the total amount of $5,246.00.
5. Defendant shall pay the costs of this matter.
This the 6th day of June, 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ BUCK LATTIMORE COMMISSIONER